# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELIQUE L. JOHNSON, | Case No.: 1:11-cv-01086-SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S COMPLAINT** |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | (Docs. 1, 17) |
| Defendant. | |

## INTRODUCTION

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI") pursuant to Title XIV of the Social Security Act (the "Act"). 42 U.S.C. § 1383(g). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 9, 10.)

# FACTUAL BACKGROUND

Plaintiff was born in 1955, completed the tenth grade, and has no past relevant work. (Administrative Record ("AR") 22, 28, 56, 123.) In December 2006, Plaintiff filed an application for SSI, alleging disability beginning on August 1, 1995, due to Hepatitis C, liver disease, and anxiety attacks. (AR 108-14, 119.)

**A.   Relevant Medical History**

On February 20, 2007, Plaintiff was examined by David C. Richwerger, Ed.D. (AR 192-97.) Plaintiff reported to Dr. Richwerger that she has been experiencing anxiety, depression, and difficulty coping since the death of a loved one in 1990. (AR 192.) Plaintiff stated that when she was a child, her parents placed her in a psychiatric hospital "because '[s]he was a spoiled brat.'" (AR 192.) She had also undergone outpatient counseling, and her last visit was about three years prior to the examination. (AR 193.) She had been placed on Xanax for depression and anxiety, but she became addicted to the medication. (AR 193.) Symptomatically, Plaintiff reported experiencing difficulty concentrating and memory issues over "the last few years." (AR 193.) While Plaintiff denied auditory or visual hallucinations, she reported that she sometimes felt as though people are watching her. (AR 193.) She reported troubling thoughts and indicated she felt anxious and depressed. (AR 193.)

Plaintiff stated that she used to drink alcohol, but reported she had been sober for five months. (AR 193.) She previously used "every kind" of street drug, but her last drug use was 20 years ago. (AR 193.) Medically, Plaintiff told Dr. Richwerger that she had been diagnosed with Hepatitis C, she had spinal meningitis when she was two, and she has been in motor vehicle accidents resulting in elbow and knee surgeries. (AR 193.) She reported to Dr. Richwerger that she was currently taking methadone for her pain, and Klonopin for anxiety. (AR 194.)

Plaintiff reported living in a house with family and friends, but indicated that she does not sleep very well and her appetite is reduced. (AR 194.) Plaintiff performs household chores such as cooking and attends to her personal grooming including dressing and bathing. (AR 194.) She reported going to the store, but indicated that she usually did not go anywhere or do anything. (AR

194.) Plaintiff "gets along okay with family and relatives but would 'rather not.'" (AR 194.) She also reported getting along fine with friends. (AR 194.)

Based on his examination, Dr. Richwerger found that Plaintiff was fully oriented to time, place, person, and purpose for the evaluation; her verbal response time was within normal limits, not delayed, and not diminished; no articulation problems were noted; and her thought processes were "clear and rational but somewhat concrete." (AR 194.) Dr. Richwerger noted that Plaintiff was "talkative." (AR 194.) Dr. Richwerger found that Plaintiff's understanding of instructions was within normal limits for simple tasks, and she had occasional difficulty with complex tasks. (AR 195.) He found Plaintiff to be mildly anxious at the examination's outset, but "then she calmed to some degree." (AR 195.) Plaintiff's memory responses were in the low to average range, her concentration and attention was found to be in the average to low range, but she had occasional difficulty with comprehension tasks. (AR 195.) Dr. Richwerger listed a diagnostic impression of alcohol dependence in remission, anxiety disorder by history given, and adjustment disorder with depressed mood, secondary to health related concerns and loss. (AR 196.)

Dr. Richwerger also provided a functional assessment indicating that Plaintiff has (1) slight impairment in her ability to perform detailed and complex tasks; (2) no impairment in her ability to perform simple and repetitive tasks; (3) slight impairment in her ability to perform work activities on a consistent basis; (4) no impairment in the ability to perform work activities without special supervision; (5) moderate impairment in the ability to complete a normal workday or workweek without interruption from a psychiatric condition; (6) slight impairment in the ability to understand and accept instruction from supervisors; (7) slight impairment in the ability to interact with coworkers and the public; (8) no impairment in the ability to maintain regular attendance in the workplace; (9) slight impairment in the ability to deal with the ususal stresses encountered in competitive work; and (10) is capable of managing her own funds. (AR 197.)

On March 23, 2007, non-examining state agency consultative examiner G.K. Ikawa reviewed Plaintiff's medical records and completed a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique form. (AR 198-211.) Dr. Ikawa found Plaintiff moderately limited in her ability to understand, remember, and carry out detailed instructions and moderately limited

in her ability to interact appropriately with the general public. (AR 198-99.) In all other areas of functioning, Dr. Ikawa determined that Plaintiff was "not significantly limited." (AR 198-200.) Dr. Ikawa concluded that Plaintiff was able to sustain simple, repetitive tasks, and was able to relate to the general public so long as the contact was limited. (AR 200.) Dr. Ikawa's findings were affirmed by Dr. E. A. Murillo, who also found that Plaintiff was able to perform simple, repetitive tasks with limited public contact. (AR 242.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 65, 69-73, 81-82.) On January 20, 2009, ALJ Daniel G. Heely held a hearing where Plaintiff testified through the assistance of counsel. (AR 25-59.)

**1.     Plaintiff's Testimony**

Plaintiff testified that she has never had a 40-hour-a-week job, and had previously worked as homemaker and provided care to her sister approximately two days a week over the course of several months. (AR. 30, 52.) She reported trouble with joint pain and nausea, and stated that she was currently on the donor waiting list for a new liver. (AR 30.)

Plaintiff testified she currently lives alone, and that she rarely drives. (AR 40-41.) She does not do anything socially or for recreation. (AR 53.) She also does not like to go outside. (AR 53.) Plaintiff stated that she currently attends Alcoholics Anonymous meetings twice a month, prepares light meals, watches television, attends to her own grooming, and cares for her cat. (AR 46-68.) She experiences pain in her shoulders, hands, knees, neck, and back due to injuries sustained as the result of a car accident, and she experiences frequent nausea that has caused her to lose weight. (AR 49-50.)

**2.     Vocation Expert Testimony**

Vocational Expert ("VE") Steven Schmidt also testified at the hearing. (AR 55-58.) The ALJ posed several hypotheticals to the VE. In the first hypothetical, the ALJ asked the VE to assume a person of the same age and with the same education and work history as Plaintiff who could sit, stand, or walk less than two hours each; lift and carry less than ten pounds occasionally; never climb,

balance, stoop, kneel, crouch, crawl, or work around hazards; and would need numerous unscheduled work breaks. (AR 56.) The VE testified that there would be no full-time work that could be performed by such an individual. (AR 56.)

The ALJ posed a second hypothetical, again asking the VE to assume a person of the same age and with the same education and work history as Plaintiff who could perform simple routine tasks with only occasional public contact; and could sit, stand, and/or walk six hours each with normal breaks, lift and/or carry 20 pounds occasionally, and ten pounds frequently; occasionally stoop or kneel; and could engage in frequent, but not constant, bilateral handling and fingering with the upper extremities. (AR 56.) The VE testified that there was no work that such a hypothetical person could perform. (AR 56.) The VE explained that a person limited to occasional public contact would have to work in unskilled production jobs. Based upon the work restraints and education posed in the hypothetical, those types of production jobs would require constant hand usage. (AR 57.)

In a third hypothetical, the ALJ asked the VE to assume the same limitations as stated in second hypothetical, but that the VE should eliminate the limitation to occasional public contact. (AR 57.) The VE testified that, by lifting the occasional public contact limitation, there would be work that such a hypothetical individual could perform including that of parking attendant, information clerk, and cashier. (AR 57.)

Plaintiff's attorney questioned the VE how many absences would be tolerated in the identified positions before there would be adverse consequences by the employer such as suspension or termination. (AR 58.) The VE responded that exceeding two absences a month would be considered unacceptable in a competitive employment situation. (AR 58.)

**3.    ALJ Decision**

On July 16, 2009, the ALJ issued a decision, finding Plaintiff not disabled since May 2006 through the date of decision. (AR 16-24.) The ALJ found that Plaintiff had the following severe impairments: Hepatitis, arthralgias, carpal tunnel syndrome, arthritis, degenerative disc disease, chronic obstructive pulmonary disease, alcohol dependence – in remission, an anxiety disorder, and an adjustment disorder. (AR 18.) Based on these severe conditions in combination with the

functional effects of Plaintiff's non-severe impairments, the ALJ determined Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform a limited range of light work in jobs that required only simple, repetitive tasks. (AR 19.) The ALJ found Plaintiff able to perform jobs involving sitting, standing and/or walking for six hours each in an eight-hour workday, if given normal breaks. (AR 19.) The ALJ further determined that Plaintiff retained the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently. (AR 19.) The ALJ limited Plaintiff to only occasional stooping or kneeling, and frequently, but not constantly, engaging in bilateral handling and fingering with her upper extremities. (AR 19.)

The ALJ determined that Plaintiff had no past relevant work (AR 22), but, based on testimony from the VE, Plaintiff could perform work as a parking attendant, an information clerk, and a cashier. (AR 93.) The ALJ concluded that Plaintiff was not disabled since December 13, 2006, when Plaintiff filed her application for SSI. (AR 94.)

Plaintiff sought review of this decision before the Appeals Council. (AR 11-12.) On March 24, 2011, the Appeals Council denied review. (AR 4-8.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant

1  has sufficient residual functional capacity despite the impairment or various limitations to perform
2  her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the
3  Commissioner to show that the claimant can perform other work that exists in significant numbers
4  in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or
5  not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v.*
6  *Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### A.   The ALJ's Consideration of Dr. Richwerger's Opinion

Plaintiff argues that the ALJ erred in disregarding Dr. Richwerger's opinion that Plaintiff is impaired in her ability to complete a normal workday or workweek without interruption. (Doc. 14, 7:18-8:7.)[3] According to Plaintiff, the ALJ rejected this portion of Dr. Richwerger's opinion because it was inconsistent with his finding that Plaintiff had no more than light limitations in other areas, but in doing so, the ALJ impermissibly selected only some portions of the opinion to credit. (*See* Doc. 18, 4:3-5.) Plaintiff argues that Dr. Richwerger had the opportunity to observe Plaintiff and if the ALJ had concerns about Dr. Richwerger's opinion, the ALJ was obligated to recontact Dr. Richwerger to clarify any questions. (Doc. 18, 4:8-14.)

The Commissioner contends that the ALJ's consideration of Dr. Richwerger's opinion was appropriate and proper. (Doc. 17, 6:2-8:24.) First, the Commissioner notes that Plaintiff does not dispute Dr. Richwerger's conclusion that Plaintiff was moderately limited in the ability to complete a workweek was contradicted by his overall opinion. As such, the Commissioner asserts Plaintiff has waived this argument. (Doc. 17, 7:3-7.) Second, Dr. Richwerger's opinion in this regard was inconsistent with his own findings – which do not support the limitation opined. (Doc. 17, 7:8-9:9.) Further, Dr. Richwerger's opinion in this regard was contradicted by Dr. Ikawa's opinion. (Doc. 17, 8:10-24.)

Pursuant to Ninth Circuit case law, the ALJ is required to provide "clear and convincing" reasons for rejecting the uncontroverted opinion of either a treating or examining physician or

---

[3] References to page numbers in the parties' briefs correspond to the CM/ECF pagination at the top of the filed document.

8

psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even where a treating or examining physician's opinion is contradicted, it may "only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d at 725. However, the ALJ "need not discuss *all* evidence presented." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

To the extent that Plaintiff argues that the ALJ erred by crediting some portions of Dr. Richwerger's opinion, but giving less weight to other portions of his opinion, this is not in and of itself error on the part of the ALJ. An ALJ may properly rely upon only selected portions of a medical opinion while rejecting other parts. *See, e.g., Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes substantial evidence). However, such selective reliance must be consistent with the medical record as a whole. *See Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ may not reject portion of a medical report that is clearly reliable).

Here, the ALJ gave less weight to Dr. Richwerger's opinion that Plaintiff would have moderate limitations in completing a normal work week because Dr. Richwerger found that Plaintiff has no more than slight limitation in all other areas of functioning. In other words, the ALJ found Dr. Richwerger's opinion in this regard to be unsupported by the examination findings. (AR 22.) Specifically, Dr. Richwerger concluded that Plaintiff "appears to have moderate impairment in her ability to complete a normal workday or workweek without interruption from a psychiatric condition" (AR 197), but there are no examination findings that explain this limitation. In fact, while Dr. Richwerger opined that Plaintiff had a moderate limitation in the ability to complete a normal workday or workweek, he contrarily found that Plaintiff "appears to have no impairment in her ability to maintain regular attendance in the workplace." (AR 197.) Based on these inconsistencies, the ALJ was entitled to assign less weight to this portion of Dr. Richwerger's opinion. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ may reject the opinion of any physician that is

brief, conclusory, and not supported by clinical findings). The ALJ's rejection Dr. Richwerger's opinion as unsupported and inconsistent with his clinical findings is a specific and legitimate basis to give less weight to that portion of the opinion. *Id.*

Moreover, the ALJ noted that Drs. Ikawa and Murillo found Plaintiff "not significantly limited" in her ability to complete a normal workday or workweek without interruptions from psychologically based symptoms. (AR 199, 242.) Given Dr. Richwerger's examination findings establishing only "slight" limitations in the other areas of functioning coupled with the non-examining physicians' opinions that Plaintiff had only slight limitation in this area of functioning, there is substantial evidence to support the ALJ's conclusion that Plaintiff does not suffer moderate limitations in the ability to complete a normal workday or workweek.

**B.     The ALJ's Consideration of Drs. Ikawa and Murillo's Opinion As to Public Contact**

Plaintiff contends that the ALJ improperly rejected the opinions of the state-agency non-examining physicians to the extent that they opined that Plaintiff was limited in her ability to deal with the public. (Doc. 14, 6:22-7:17.)

The Commissioner disputes that the ALJ weighed the opinions of the non-examining state agency physicians improperly. The Commissioner asserts that Dr. Richwerger opined that Plaintiff had only a "slight impairment" in her ability to interact with co-workers or the public (Doc. 17, 9:8-15), and the ALJ relied on this portion of Dr. Richwerger's opinion because it was more consistent with the record as a whole (Doc. 17, 9:12-16).

The ALJ gave express consideration to Dr. Ikawa's opinion that Plaintiff had moderate limitation in her ability to interact appropriately with the general public, and gave this portion of the opinion somewhat less weight. (AR 22.)   The ALJ explained that there was no credible evidence that Plaintiff has moderate problems getting along with others. (AR 22.) The ALJ reasoned that Plaintiff had told Dr. Richwerger that she gets along well with her friends, and she had a significant relationship with her roommate and neighbor such that they were able to submit statements on her behalf. (AR 22.) The ALJ noted that neither of these witnesses reported that Plaintiff had any problems getting along with others. (AR 22.) The ALJ also considered Plaintiff's statement that she

has some problems getting along with her family, but concluded that this was more likely due to Plaintiff's past substance abuse issues than her current psychiatric impairment. (AR 22.)

While Plaintiff argues that the ALJ improperly submitted his "own lay medical opinion for those of highly qualified physicians" (Doc. 18, 4:19-20), substantial evidence in the record supports the ALJ's rejection of Drs. Ikawa and Murillo's opinion that Plaintiff was limited in her ability to deal appropriately with the general public. As the ALJ noted, Dr. Richwerger opined that Plaintiff had only a "slight impairment in her ability to interact with coworkers and the public," to which the ALJ ascribed great weight. (AR 22, 197.) Further, the ALJ discussed the other evidence of record supporting the finding that Plaintiff was not limited in her ability to interact with the general public, including Plaintiff's testimony indicating no such limitation and lay witness statements that provided no evidence that Plaintiff was unable to get along well with others. In this regard, Dr. Richwerger's opinion was more consistent with the evidence in the record. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."). The ALJ provided specific and legitimate reasons to discount Drs. Ikawa and Murillo's opinion in this regard, and substantial evidence supports the ALJ's ultimate conclusion.

## CONCLUSION

After consideration of the Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff ANGELIQUE L. JOHNSON.

IT IS SO ORDERED.

Dated: **November 6, 2012**          /s/ Sheila K. Oberto
                                                          UNITED STATES MAGISTRATE JUDGE